**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

STATE OF NEW MEXICO, *ex rel*. HECTOR
BALDERAS, ATTORNEY GENERAL, and
the NEW MEXICO ENVIRONMENT
DEPARTMENT,

                Plaintiffs,

     v.

UNITED STATES OF AMERICA and
UNITED STATES DEPARTMENT OF THE
AIR FORCE,

             Defendants.

Case No. 1:19-cv-00178-MV-JFR


**UNITED STATES' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY
INJUCTION AND CROSS-MOTION TO DISMISS**

*Of Counsel:*
MICHAEL CASILLO
Environmental Litigation Center
U.S. Air Force
Joint Base Andrews, MD

EILEEN MCDONOUGH
DAVID MITCHELL
ERICA ZILIOLI
  *Trial Attorneys*
  Environmental Defense Section
  P.O. Box 7611
  Washington, D.C.  20044
  (202) 514-3126
  eileen.mcdonough@usdoj.gov

## TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Introduction ................................................................................................................... 1

Background .................................................................................................................... 3

    I.      Statutory and Regulatory Background .................................................... 3

          A.      Resource Conservation and Recovery Act (RCRA) ................................. 3

          B.      New Mexico Hazardous Waste Act ........................................................ 4

          C.      Comprehensive Environmental Response, Compensation, and Liability Act  (CERCLA) ................................................................. 5

          D.      The Defense Environmental Restoration Program (DERP) ...................... 6

    II.     Factual Background ............................................................................... 7

          A.      PFOS/PFOA ......................................................................................... 7

          B.      Response Activities at Cannon Air Force Base ........................................ 9

          C.      Response Activities at Holloman Air Force Base .................................. 11

    III.    Procedural Background ........................................................................ 13

Standard of Review ..................................................................................................... 14

    I.      Standard Applicable to Motion to Dismiss ........................................... 14

    II.     Standard Applicable to Motion for Preliminary Injunction. .................. 15

SUMMARY OF Argument ........................................................................................... 16

ARGUMENT ............................................................................................................... 18

    I.      New Mexico's Complaint Must Be Dismissed ..................................... 18

          A.      CERCLA Section 113(h) Bars New Mexico's RCRA Citizen Suit. ........ 19

1. The Air Force Is Responding to PFOS and PFOA Pursuant to Section 104 of CERCLA. ....................................................... 20

2. New Mexico's RCRA Claim Challenges the Air Force's CERCLA Response. ................................................................... 21

B. The United States Has Not Waived Sovereign Immunity as to New Mexico's  State Law Imminent-Endangerment Claim. ............................ 23

II. New Mexico Has Not Satisfied Its Heightened Burden of Showing Entitlement to a Mandatory Preliminary Injunction. ............................................. 28

A. New Mexico Will Not Be Irreparably Harmed by the Status Quo. .......... 28

1. The Air Force Is Already Addressing the PFOS and PFOA Releases at Both Sites.                               28

2. Plaintiffs Have Not Met Their Burden of Showing Probable Irreparable Harm As Necessary to Justify a Preliminary Injunction.     29

3. New Mexico's Delay in Pursuing a Preliminary Injunction Undermines Its Claim of Irreparable Harm.
                    32

B. New Mexico Has Not Made the Strong Showing Required by the Tenth  Circuit That It is Likely to Obtain Relief on the Merits ............... 32

C. The Balance of Equities Weighs in Favor of the United States, and Issuance  of an Injunction Would Harm the Public Interest. .................... 34

Conclusion ................................................................................................................ 37

## INTRODUCTION

The Complaint in this action should be dismissed because it is a prohibited challenge to ongoing response actions by the Air Force under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) and New Mexico cannot bring suit against the United States under state law to remedy the alleged imminent and substantial endangerment. And, should the Complaint survive (which it should not), Plaintiffs' preliminary injunction motion must fail for many reasons, most prominently their complete inability, in the face of the Air Force's response actions, to show probable irreparable harm.

New Mexico's Complaint focuses on per- and polyfluorinated alkyl substances or "PFAS," which are a widely-used class of chemicals found in products ranging from non-stick cookware to stain repellants.  In specific, the Complaint addresses one such product: the firefighting foam used to extinguish petroleum fires at commercial airports and military facilities.  This foam contains two chemicals from the PFAS class:  perfluorooctane sulfonate (PFOS) and perfluorooctanoic acid (PFOA), which are jointly referred to hereinafter as PFOS/PFOA

The science on PFOS and PFOA and the potential to cause adverse health effects is relatively new and continues to evolve.  The United States has been working to better understand the extent and nature of risks from exposure to PFAS and to address known releases of PFOS and PFOA.   Since 2010, the Air Force has been investigating and addressing releases of PFOS and PFOA at installations across the country under the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).  The Air Force is using a risk-based prioritization approach.  The Cannon and Holloman Air Force Bases at issue in this case are among the installations being addressed in this complex program, which includes approximately 200 installations.

1

Within the last four years, pursuant to CERCLA, the Air Force conducted preliminary assessments at both Bases to identify areas where firefighting foam was used; followed that assessment with additional investigation, monitoring and testing; and followed *that* with a full site inspection. *See infra* at 9-13. This preliminary investigative work has detected PFOS and PFOA in multiple locations. Most of this PFOS and PFOA remain on base, but in a handful of instances some has migrated off-site and reached drinking water wells. Although there is no regulatory limit on PFOS and PFOA in drinking water, in an abundance of caution the Air Force has worked diligently to ensure that affected residents have access to alternative drinking water. The Air Force has scheduled remedial investigations (the next step in the CERCLA process) at Cannon in 2021 and at Holloman in 2023.

Plaintiffs New Mexico and the New Mexico Environment Department (collectively State or New Mexico) would like the Air Force to be doing something different, and thus ask the Court under RCRA's citizen-suit imminent and substantial endangerment (imminent-endangerment) provision, 42 U.S.C. § 6972(a)(1)(B) and New Mexico's imminent-endangerment authority, N.M. Stat. Ann. § 74-4-13(a), to require the Air Force to abate the alleged endangerment, to fund work done by the State or third parties, and "to take all steps necessary to achieve permanent and consistent compliance with" state and federal environmental laws. Amended Complaint (ECF 9) (Compl.), Prayer for Relief. New Mexico also asks the Court for "immediate injunctive relief" prior to litigating this case. It would, however, be highly disruptive if courts allowed outside parties to substitute their own judgment for that of agencies exercising Presidentially-delegated CERCLA cleanup authority. For precisely that reason, CERCLA bars federal courts from exercising jurisdiction over any "challenge" to CERCLA response action. 42 U.S.C. § 9613(h). New Mexico's claims constitute just such a "challenge." Furthermore, the United States has not

waived sovereign immunity for the New Mexico's state law imminent-endangerment claim. Jurisdiction lacking, New Mexico's Complaint must be dismissed.

Even if New Mexico's Complaint survives, the state has not shown that it is entitled to the extraordinary remedy of preliminary affirmative, mandatory relief—including expedited discovery, investigatory actions, blood testing, and alternate water supplies. Most critically, in light of the Air Force's ongoing work to address PFOS and PFOA releases at both Bases, New Mexico has not established "the single most important prerequisite for the issuance of a preliminary injunction," that being "probable irreparable harm." *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1249 (10th Cir. 2017). And the State's requested relief would re-prioritize the Air Force's risk-based approach of addressing the bases with the greatest risks first – a serious disservice to the public interest. Thus, the motion for preliminary injunction should be denied.

## BACKGROUND

I.     **Statutory and Regulatory Background**

   A.     **Resource Conservation and Recovery Act (RCRA)**

RCRA, 42 U.S.C. §§ 6901-92k, is a comprehensive statutory scheme "that governs the treatment, storage, and disposal of solid and hazardous waste." *Meghrig v. KFC W., Inc.*, 516 U.S. 479, 483 (1996). RCRA is "designed to reduce or eliminate the generation of hazardous waste to minimize the present and future threat to human health and the environment." *See* 42 U.S.C. § 6902(b); *Crandle v. City & County of Denver*, 594 F.3d 1231, 1233 (10th Cir. 2010). Subtitle C of RCRA, 42 U.S.C. §§ 6921-39, provides for the cradle-to-grave management of hazardous waste. *See City of Chicago v. Envt'l Defense Fund*, 511 U.S. 328, 331-32 (1994).

RCRA's citizen suit provision authorizes any person, including a State, to commence a civil action:

3

> against any person, including the United States . . .  who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B).  This provision authorizes suit against the United States for imminent and substantial endangerment claims under RCRA, *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 619 (1992), and authorizes the district court:

> to restrain any person who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste referred to in paragraph (1)(B), to order such person to take such other action as may be necessary, or both.

42 U.S.C. § 6972(a).  No person may bring suit prior to "ninety days after the plaintiff has given notice of the endangerment to [the United States Environmental Protection Agency (EPA)], the State where the endangerment may occur and the defendant]."  *Id.* § 6972(b)(2)(A).  There are also certain other limitations not relevant here.

**B.     New Mexico Hazardous Waste Act**

RCRA allows EPA to authorize state hazardous waste programs to operate in lieu of the federal program.  42 U.S.C. § 6926(b); *United States v. Richter*, 796 F.3d 1173, 1183 (10th Cir. 2015).  New Mexico operates an EPA-authorized program under the New Mexico Hazardous Waste Act of 1978 ("HWA"), N.M. Stat. Ann. §§ 74-4-1 *et seq*., and its implementing regulations.  *See* 40 C.F.R. § 272.1601.  The United States is subject to the HWA insofar as Congress has waived sovereign immunity under Section 6001(a) of RCRA, which in relevant part provides:

> Each department, agency, and instrumentality . . . shall be subject to, and comply with, all . . . State . . . requirements both substantive and procedural (including any requirement for permits or reporting or any provisions for injunctive relief and such sanctions as may be imposed by a court to enforce such relief), respecting control and abatement of solid waste or hazardous waste disposal and management . . . .

42 U.S.C. § 6961(a).

4

### C.    Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA)

CERCLA is designed "to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts [are] borne by those responsible for the contamination." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (citation and internal quotation marks omitted).  Section 104 of CERCLA authorizes the President "to act, consistent with the National Contingency Plan (NCP)" if there has been a release or threatened release of "any . . . pollutant or contaminant which may present an imminent and substantial danger to the public health or welfare." 42 U.S.C. § 9604(a)(1); 40 C.F.R. Part 300.[1]  Actions taken under section 104 may include:

> such investigations, monitoring, surveys, testing, and other information gathering . . . necessary or appropriate to identify the existence and extent of the release or threat thereof, the source and nature of the . . .  pollutants or contaminants involved, and the extent of danger to the public health or welfare or to the environment.

42 U.S.C. § 9604(b)(1).  Section 104 further authorizes the President (or his delegate) to "take any  . . . response measure" consistent with the NCP.  42 U.S.C. § 9604(a)(1).  "Responses" under CERCLA are removals and remedial actions.  42 U.S.C. § 9601(25).  Removals are generally short-term responses to mitigate threats, but also include preliminary efforts to identify and assess the nature, extent and threat of release.  *See Cannon v. Gates*, 538 F.3d 1328, 1333-34 (10th Cir. 2008).  Remedial actions are those "taken instead of or in addition to removal actions" to provide a permanent remedy.  *Id.* § 9601(24).

The President delegated CERCLA response authority to the Administrator of EPA and to other Department heads.  *See* Executive Order No. 12,580, 52 Fed. Reg. 2923 (Jan. 23, 1987); 42

---

[1]  PFOS and PFOA are not designated as hazardous substances under CERCLA.  *See* 42 U.S.C. § 9601(14); 40 C.F.R. § 300.5; 40 C.F.R. § 302.4.  The Air Force is responding to PFOS and PFOA releases as pollutants and contaminants.

U.S.C. § 9615.  As relevant here, Executive Order No. 12,580 delegates to the Secretary of

Defense response authority under CERCLA Section 104 "where either the release is on or the

sole source of the release is from any facility or vessel under the jurisdiction, custody, or control"

of the Department of Defense.  Executive Order No. 12,580 ¶ 2(e)(1); *see also* ¶ 2(d).  The Air

Force thus is the lead agency for releases on or solely from Cannon and Holloman Air Force

Bases.  *See id.*

CERCLA section 113(h) directs that "[n]o Federal court shall have jurisdiction . . . to

review any challenges to removal or remedial action selected under [CERCLA section 104]"

except in limited circumstances.  42 U.S.C. § 9613(h).  Section 113(h) "protects the execution of

a CERCLA plan during its pendency from lawsuits that might interfere with the expeditious

cleanup effort," thus promoting "CERCLA's overall goal of effecting the prompt cleanup of

hazardous waste sites."  *Cannon,* 538 F.3d at 1332 (10th Cir. 2008) (citations and internal

quotations omitted); *see also Pollack v. United States Dep't of Defense,* 507 F.3d 522, 525 (7th

Cir. 2007) (in enacting CERCLA section 113(h), Congress intended to ensure that contamination

will be "cleaned up as quickly as possible and without interruption by citizen suits").

### D.    The Defense Environmental Restoration Program (DERP)

DERP, 10 U.S.C. §§ 2700-2710, was established as part of the 1986 amendments to

CERCLA.  It authorizes the Secretary of Defense to carry out response actions addressing

releases of hazardous substances, pollutants, and contaminants from, among other facilities,

those "owned by, leased to, or otherwise possessed by the United States and under the

jurisdiction of the Secretary." 10 U.S.C. § 2701(c)(1)(A).  DERP responses must be conducted in

accordance with CERCLA and in consultation with EPA and State authorities.  *See id.* §§

2701(a), (c)(1).  DERP established accounts that the Department of Defense must use for

environmental restoration projects.  *Id.* § 2703(a), (c).  The military department heads are

delegated the response authorities of the Department of Defense for CERCLA responses

financed under DERP.  *See* 40 C.F.R. § 300.5 (defining "lead agency"); DoD Instruction

4715.07, "Defense Environmental Restoration Program," with Change 2, Aug. 31, 2018, Encl. 2,

Para. 7.a (Available at

https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/471507p.pdf?ver=2018-12-

18-085833-617 (last accessed Sept. 4, 2019).

## II.     Factual Background

### A.     PFOS/PFOA

While PFAS are used in many products, New Mexico's Complaint addresses only a type

of firefighting foam containing PFOS and PFOA that is known as aqueous film forming foam

(AFFF or firefighting foam).  Compl. ¶ 44.  The Air Force began using this firefighting foam to

extinguish petroleum fires and to train firefighters in 1970.  Compl. ¶ 45; Ex. 1, Declaration of

William Brian Howard, ¶ 11 (Howard Decl.).  The Air Force is working to phase out its use of

firefighting foam containing PFOS and PFOA.  Compl. ¶ 50; Howard Decl. ¶ 17.  However,

firefighting foam containing PFOS and PFOA is still considered the most efficient method to

extinguish petroleum fires and is widely used across the firefighting industry, including at

commercial airports.  Howard Decl. ¶ 11.

There has been growing attention in recent years to the potential health effects of

exposure to PFAS.  In 2012, EPA added six PFAS, including PFOS and PFOA, to the list of

unregulated contaminants to be monitored under the Safe Drinking Water Act, 42 U.S.C. § 300j-

4(a)(2).  EPA, Final Rule, Revisions to the Unregulated Contaminant Monitoring Regulation

(UCMR 3) for Public Water Systems, 77 Fed. Reg. 26,072, 26,073 (May 2, 2012).  And in 2016,

EPA issued a lifetime health advisory of 70 parts per trillion (ppt) for two categories of PFAS in

drinking water: PFOS and PFOA.  These health advisories are not regulatory and are not

enforceable; instead, they are a source of information for state agencies and public health

officials "on contaminants that can cause human health effects and are known or anticipated to

occur in drinking water."  *See* 42 U.S.C. § 300g-1(b)(1)(F); EPA, Fact Sheet: PFOA and PFOS

Drinking Water Health Advisories at 2, available at

https://www.epa.gov/sites/production/files/2016-

06/documents/drinkingwaterhealthadvisories_pfoa_pfos_updated_5.31.16.pdf (last viewed on

Sept. 5, 2019).  The advisory levels identify concentrations below which adverse health effects

are not anticipated to occur over a lifetime.  *Id.* at 2.

### B.    The Air Force's Response to PFOS/PFOA

The Department of Defense has developed an overall plan to address PFOS and PFOA

released at or from its facilities using CERCLA and DERP.  The Department prioritizes its

efforts so that "sites that pose a greater potential risk to human health and the environment" will

be addressed first.  Examining the Federal Response to the Risks Associated with [PFAS]:

Hearing before S. Comm. On Env't and Pub Works (statement of Maureen Sullivan, Dep. Ass't.

Sec. of Defense for Env't, DoD) 116 Cong. 20 (2019).

In 2010, the Air Force began a comprehensive assessment process under CERCLA to

identify locations where PFOS and PFOA[2] may have been released at active and closed Air

---

[2]  A third PFAS may also be included in CERCLA response actions: perfluorobutanesulfonic
acid (PFBS).  Similar to PFOS and PFOA, EPA has established regional screening levels for
PFBS in both soil and tap water.  As its name suggests, a regional screening level (like a health
advisory) is not regulatory.  It is simply a risk-based threshold used to help identify areas at
Superfund sites requiring further study or action.  *See* EPA, Regional Screening Levels Frequent
Questions, https://www.epa.gov/risk/regional-screening-levels-frequent-questions#FQ1 (last
visited Aug. 23, 2019).

Force, Reserve, and National Guard installations across the United States.  Ex. 1, Howard Decl. ¶ 13.  This program encompasses approximately 200 facilities.  *Id*. ¶ 15.  The Air Force has spent over $424 million on this program.  *Id*. ¶ 15.  The resulting response actions have prioritized identifying and mitigating any potential risk of human exposure to PFOS and PFOA in drinking water.  *Id*. ¶ 14.  Once any short-term CERCLA response actions are taken, the CERCLA investigation proceeds to evaluating long-term remedial actions.

### B.    Response Activities at Cannon Air Force Base

Cannon Air Force Base is an approximately 4,000-acre installation located near Clovis in Curry County, New Mexico.  Compl. ¶ 54.  Cannon has been in operation since 1942 and currently houses the Air Force's 27th Special Operations Wing.  *Id*. ¶ 58.  Cannon operates under a waste management permit issued by the State of New Mexico, which was most recently reissued in December 2018.[3]  *Id*. ¶ 90.

The Air Force began investigating potential PFOAS and PFOA releases at Cannon Air Force Base under CERCLA as part of the comprehensive Air Force-wide assessment.  Ex.2, Declaration of Sheen Thomas Kottkamp (Sept. 5) (Kottkamp Decl.) ¶ 6.  In 2015, the Air Force conducted a preliminary assessment to identify areas of the base where firefighting foam was used.  *Id*. ¶ 7.  As part of its preliminary assessment, the Air Force conducted a site visit, reviewed documents about how and where firefighting foam was used at the Base, and interviewed numerous Base personnel.  *Id*. ¶ 15.   The findings are set forth in the Final Preliminary Assessment Report for Perfluorinated Compounds, Cannon Air Force Base, New

---

[3]  The United States is seeking review of certain aspects of the December 2018 permit, *see United States v. New Mexico*, 2:19-cv-00046 (D.N.M.), but the permit remains in effect during that suit.

Mexico at 1-1 (Oct. 2015) ("Cannon PA Report").  Kottkamp Decl. ¶ 15 and attachment 1 (excerpts).[4]

After the preliminary assessment was completed, the Air Force developed a work plan specific to Cannon.  Kottkamp Decl. ¶ 9.  Investigation focused on the areas identified by the Cannon PA report and follow-on scoping visit.  *Id*.  In relevant part, the Cannon inspections included taking soil, sediment, surface water, and groundwater samples.  *Id*.  The samples showed the presence of PFOS or PFOA in groundwater exceeding the EPA health advisory, as well as PFOS or PFOA in soil.  *Id*.  The results were set forth in the Final Site Inspection Report, Site Inspection of [AFFF] Release Areas, Environmental Programs Worldwide, Cannon Air Force Base (Aug. 2018) ("Cannon SI Report").  Kottkamp Decl. ¶ 10.[5]  The Cannon SI Report, at 10-12, recommended proceeding with remedial investigations at eight areas and recommended an expanded site inspection to determine if there had been any off-site migration of PFOS or PFOA towards domestic wells.  .

The results of the expanded investigation are reported in Addendum 01 to the Site Inspection Report – Cannon AFB at 5 (Mar. 2019) ("Cannon Expanded SI Report").  Kottkamp Decl. ¶ 13 and attachment 2 (excerpts).  The Cannon Expanded SI report evaluated the potential for mitigation of down-gradient from some of the areas previously sampled.  The Air Force installed a permanent groundwater monitoring well at the boundary of Cannon to determine whether any PFOS or PFOA had migrated offsite.  Kottkamp Decl. ¶ 13.  The Air Force also promptly distributed information to potentially affected property owners within a four-mile

---

[4]  The Declarations submitted by the Air Force also contain the instructions for accessing the full documents cited.

[5]  The full Cannon SI Report is Exhibit A to the Certification of Cholla Khoury (ECF 14) filed with New Mexico's Motion.

downgradient radius of the base boundary and sought authorization to sample their wells.  *Id*. ¶ 14.  Additionally, the expanded site investigation included additional reconnaissance, including a door-to-door inventory survey to determine whether property owners used one or more wells for domestic purposes.  *Id*. ¶ 13.  The resulting survey identified twenty-five locations being sampled, as compared to the initial ten wells identified in the public report search part of the SI. *Id*.

In response to the detection of PFOS or PFOA at the three private drinking water wells, the Air Force implemented immediate response measures under CERCLA and offered bottled water to the property owners to mitigate any exposure to humans from drinking the well water until a permanent filtration system could be installed.  Kottkamp Decl. ¶ 15.  The next step in the CERCLA process will be a remedial investigation.  *Id*. ¶ 17.

**C.    Response Activities at Holloman Air Force Base**

Holloman Air Force Base is located in Otero County, New Mexico.  Compl. ¶ 94. Formerly known as Alamogordo Army Air Field, the facility began operating in 1942.  *Id*. ¶ 96. Operations at Hollman currently include missile testing, aircraft and pilot training, equipment and systems testing, and aircraft maintenance and storage.  *Id*. ¶ 97.

As at Cannon, the Air Force conducted a preliminary assessment of Holloman in 2015 as part of the Air Force-wide CERCLA assessment process.  Ex. 3, Declaration of Robin E. Paul, ¶ 7 (Sept.5, 2019) (Paul Decl.)  The Final Preliminary Assessment Report for Perfluorinated Compounds at Holloman AFB was issued in September 2015.  An additional scoping site visit was conducted in October 2016.  Paul Decl. ¶ 8.  Following the preliminary assessment and scoping site visit, the Air Force identified a total of 31 potential firefighting foam release areas, and recommended five of those areas for further investigation.  *Id*. ¶¶ 7-8.

11

The results of this investigation are presented in the Final Site Inspection Report

Holloman Air Force Base (Nov. 2018) ("Holloman SI Report").[6]  The Air Force collected

samples were taken of soil, groundwater, surface waters, sediments, and effluent from the on-site

waste water treatment plant in October and November 2017.  Paul Decl. ¶ 9.  The samples

showed the presence of at least one type of PFOS and PFOA in surface water and groundwater

exceeding the EPA health advisory. *Id*. ¶¶ 9, 11.  However, the site investigation revealed no

human health exposure pathways because the surface water and groundwater downgradient of

the Holloman Air Force Base are not used for drinking water due to levels of total dissolved

solids in excess of State standards.  *Id*. ¶¶ 11-12.  The closest downgradient drinking water wells

are located 12 miles away from Holloman, and no PFOS or PFOA were detected in them.  *Id*. ¶

13.

Notwithstanding the lack of risk to drinking water, the Air Force informed the local

community and base personnel about the presence of PFOS and PFOA and held multiple

meetings with the various stakeholders.  Paul Decl. ¶ 14.  Although base personnel and others

from the community could come into passing contact with PFOS or PFOA in surface waters

from maintaining or trespassing in surface water bodies, including the fenced-off Holloman

Evaporation Pond (also called Lake Holloman), there is not now sufficient information to

conclude that dermal contact or incidental ingestion of water could present a risk.  *Id*. ¶ 11; *see*

EPA, Drinking Water Health Advisories for PFOA and PFOS, https://www.epa.gov/ground-

water-and-drinking-water/drinking-water-health-advisories-pfoa-and-pfos (last visited Aug. 25,

---

[6]  The full Holloman SI Report is Exhibit C to the Certification of Cholla Khoury (ECF 14) filed
in support of New Mexico's Motion.

2019) ("There is limited information identifying health effects from inhalation or dermal exposures to PFOA or PFOS in humans and animals.").

Based on the presence of PFOS and PFOA above the health advisory at Holloman, the Air Force decided to conduct a remedial investigation. Paul Decl. ¶ 15. The Air Force has to prioritize remediating bases with greater risks to human health and the environment, the remedial investigation at Holloman is tentatively scheduled for 2022-23. *Id.* ¶ 16.

### III.    Procedural Background

On March 5, 2019, New Mexico filed a complaint asserting a claim for imminent-endangerment under the state HWA. *See* ECF 1. On July 24, 2019, New Mexico filed an amended complaint (hereinafter referred to as Complaint) adding a claim for imminent-endangerment under RCRA's citizen-suit provision. *See* Compl. ¶¶ 1, 135-150. As to RCRA, the Complaint alleges that the Air Force's activities at Cannon and Holloman Air Force Bases have contributed to the "handling, storage, treatment, transportation, and/or disposal of solid or hazardous waste" that "presents an imminent and substantial endangerment to health and/or the environment." Compl. ¶ 148; *see generally id.* ¶¶ 142-150, 42 U.S.C. §§ 6961, 6972. The State's claim that the Air Force has "violated" the New Mexico HWA is substantially similar, except that the State adds the allegation that defendants have "declined to take remedial action required under the law" at Cannon Air Force Base. Compl. ¶ 140; *see generally id.* ¶¶ 135-141.[7]

Based on these claims, New Mexico requests wide-ranging relief, including a declaration that defendants "violated the HWA and RCRA;" an injunction requiring "abatement" of alleged violations of RCRA and the HWA; an order directing defendants to "fund any costs associated with" such abatement, "whether incurred by the State or third parties;" an injunction "directing

---

[7]  The State makes no similar claim concerning Holloman.

Defendants to take all steps necessary to achieve permanent and consistent compliance with HWA and RCRA;" payment for the State's alleged unreimbursed oversight costs, along with guaranteed reimbursement for such costs in the future; civil penalties; and attorney's fees. Compl., Prayer for Relief (p. 33).

Along with its Complaint, New Mexico filed a Motion for Preliminary Injunction (ECF 10-14). The State seeks three categories of affirmative injunctive relief:

- Expedited discovery of documents;

- Further delineation of the extent of PFAS, including sampling of wells within a four-mile radius of "the southeastern corner of Cannon" and within a six-mile radius "southwest of Holloman"; and

- "Interim measures to protect the public health" including providing blood tests and alternative drinking water supplies to affected individuals.

Pltfs. Br. at 4-5.

## STANDARD OF REVIEW

### I.     Standard Applicable to Motion to Dismiss

Federal courts are courts of limited jurisdiction, and may exercise only those powers authorized by the Constitution and statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The first and most fundamental question presented by every case brought to a federal court is thus whether the court has jurisdiction to hear it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998) (jurisdiction must "be established as a threshold matter"). On a motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1), the plaintiff bears the burden of demonstrating subject matter jurisdiction. *See Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). Such motions may take two forms: a "facial attack" arguing that

14

the allegations in the complaint do not establish subject matter jurisdiction, and a "factual attack" challenging the facts on which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002 (9th Cir. 1995). In a facial attack, allegations in the complaint are presumed to be true; in a factual attack, they are not. *Id.* The United States' motion to dismiss pursuant to CERCLA 113(h) is a factual attack on jurisdiction, while its motion to dismiss for lack of a sovereign immunity waiver constitutes a facial attack.

## II.     Standard Applicable to Motion for Preliminary Injunction.

"As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation and internal quotation marks omitted). To prevail on a motion for a preliminary injunction, a movant must establish: (1) a likelihood of success on the merits; (2) a likelihood that it will suffer irreparable harm if the injunction is not granted; (3) that the balance of equities falls in its favor; and (4) that the preliminary injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

Certain preliminary injunctions, like the relief sought by New Mexico here, are particularly disfavored in the Tenth Circuit and, thus, are subject to a heightened standard. These include preliminary injunctions that: (1) alter the status quo; (2) are mandatory in nature as opposed to prohibitory; and (3) provide the movant all the relief that could be recovered at the conclusion of a trial on the merits. *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (*en banc*), aff'd, 546 U.S. 418 (2006). Where the preliminary injunction sought is one of these three types, the movant "must make a strong showing *both* with regard to the likelihood of success on the merits and with regard to the balance of harms, and may not rely on [the Tenth Circuit's] modified likelihood-of-success-on-

15

the-merits standard." *Id.* at 976 (emphasis added). "[T]he Court must closely scrutinize the motion 'to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course.'" *Oakleaf v. Martinez*, 297 F. Supp. 3d 1221, 1229 (D.N.M. 2018) (citing *Id.*).

## SUMMARY OF ARGUMENT

The Complaint must be dismissed for lack of subject matter jurisdiction. New Mexico's RCRA claim is barred by Section 113(h) of CERCLA, which precludes "any challenges to removal or remedial action selected under section 9604 of this title." 42 U.S.C. § 9613(h). The Air Force is conducting a response action under section 9604, and New Mexico's Complaint "challenges" that response by seeking to alter or add to the steps the Air Force is already taking. Further, the United States has not waived sovereign immunity for New Mexico's state law claim. Although Congress has waived federal sovereign immunity from "requirements" of state solid and hazardous waste laws, 42 U.S.C. § 6961, New Mexico cannot use this waiver to exercise its imminent-endangerment authority against the United States. RCRA's citizen-suit waiver in 42 U.S.C. § 6972(a) is the only waiver authorizing suit against the United States for imminent-endangerment. And even if 42 U.S.C. § 6961 were available, New Mexico's imminent-endangerment authority is not a qualifying "requirement." In any event, even if immunity is waived, the state law claim also is barred by Section 113(h) of CERCLA. New Mexico is not enforcing violations of its EPA-approved hazardous waste program or any other state solid or hazardous waste law. *United States v. Colorado*, 990 F.2d 1565 (10th Cir. 1993) does not apply to this case.

Even if some portion of New Mexico's Complaint survives the United States' Motion to Dismiss, New Mexico's Motion for Preliminary Injunction must be denied. That Motion demands three categories of preliminary relief, to compel the United States to produce

documents; to conduct sampling and other measures to delineate the extent of PFAS in groundwater; and to provide blood tests and alternate drinking water to the public. Pls.' Br. in Support of Mot. for Prelim. Inj. 4-5 (ECF No. 11) (hereinafter "Pls.' Br."). This kind of preliminary injunction *both* alters the status quo and is mandatory in nature, because it would require the United States to take affirmative steps to clean up the PFOS and PFOA, to provide medical testing, and to provide alternate water sources. Because the requested relief falls into two categories of preliminary injunctions that the Tenth Circuit disfavors, New Mexico must satisfy the heightened standard for a preliminary injunction set forth in *O Centro Espirita*. New Mexico has failed to meet its preliminary injunction burden and its motion must be denied.

Most critically, there is no evidence that the State of New Mexico or the New Mexico Environment Department—the only plaintiffs in this case—will suffer irreparable harm, harm which must be likely to occur prior to resolution of this lawsuit, if the Court declines to grant the extensive preliminary injunctive relief they seek. The Air Force is already addressing PFOS and PFOA releases at both Cannon and Holloman Air Force Bases. At Cannon, the Air Force sampled private well water downgradient from the base and offered an alternate water supply to the three property owners with PFOS and PFOA levels above the healthy advisory. And at Holloman, the surface water and groundwater are not even used for consumption because they fail New Mexico's drinking water standards for other constituents. Lastly, New Mexico waited months to amend their Complaint and bring a motion for preliminary injunction. Such a delay undermines their claim of irreparable harm.

New Mexico has also failed to meet its preliminary injunction burden of showing it is likely to succeed on the merits. Specifically, New Mexico has not shown that it is likely to receive any requested relief given that only injunctive relief is available and the Air Force is

17

actively engaged in a CERCLA response action to abate any endangerment that may exist.

Finally, the balance of harms and public interest weigh decidedly in favor of the United States,

because the Air Force has taken responsibility for and has been addressing PFOS and PFOA

releases at Cannon and Holloman.  It would be inequitable to require the Air Force to take on

additional obligations when the Air Force is already conducting a response action under

CERCLA, particularly when the State waited years to sue the United States and an additional

four months *after* filing this suit to seek a preliminary injunction.  For all of these reasons, New

Mexico has failed to meet its burden of demonstrating that a preliminary injunction is warranted.

## ARGUMENT

### I.    New Mexico's Complaint Must Be Dismissed.

In Count I of its Complaint, New Mexico purports to seek relief for "[v]iolation of the

New Mexico Hazardous Waste Act," while Count II seeks relief under RCRA.  Compl. ¶¶ 30-31.

Although the two counts are styled differently, both allege essentially the same thing: in sum,

that the Air Force has allegedly managed hazardous wastes at Cannon and Holloman, and that

those wastes "may present an imminent and substantial endangerment to health or the

environment."  *See* Compl. ¶¶ 137-38, 143, 145-48.  New Mexico also seeks virtually identical

relief under both counts – an injunction requiring the Air Force to "take all steps necessary to

achieve permanent and consistent compliance" with environmental laws.  *See* Compl. ¶¶ 141,

149.

New Mexico has failed to demonstrate that the Court has jurisdiction over either count of

its Complaint.  To carry that burden, New Mexico must prove that the United States has waived

its sovereign immunity.  *See Wells Fargo Bank, Nat. Ass'n v. Se. New Mexico Affordable Hous.

Corp.*, 877 F. Supp. 2d 1115, 1132-33 (D.N.M. 2012) (quoting *United States v. Mitchell,* 463

U.S. 206, 212 (1983)) (United States may not be sued without its consent); *James v. United*

18

*States,* 970 F.2d 750, 753 (10th Cir. 1992).  To satisfy this jurisdictional requirement, New

Mexico relies on (1) RCRA's imminent-endangerment citizen-suit provision, 42 U.S.C.

§ 6972(a)(1)(B) (Compl. ¶¶ 3, 13); [8] and (2) the federal-facility sovereign immunity waiver in

RCRA § 6961 (Compl. ¶ 119).  RCRA § 6972(a)(1)(B) does waive federal sovereign immunity

for the federal claim; however, as discussed in Section I.A. below, New Mexico's RCRA citizen

suit is barred by CERCLA section 113(h)'s withdrawal of jurisdiction over "challenges" to

response actions.  And while RCRA § 6961 subjects the United States to state "requirements"

respecting hazardous waste management and disposal, as discussed in Section I.B below, New

Mexico cannot use this waiver of sovereign immunity to exercise its imminent-endangerment

authority against the United States.  The Complaint should therefore be dismissed.

### A.    CERCLA Section 113(h) Bars New Mexico's RCRA Citizen Suit.

CERCLA section 113(h) provides that "[n]o Federal court shall have jurisdiction . . . to

review any challenges to removal or remedial action selected under section 9604."  42 U.S.C.

§ 9613(h).[9]  This provision "strip[s] federal jurisdiction from *any challenge* that would interfere"

with CERCLA response actions.  *Cannon*, 538 F.3d at 1336 (emphasis added); *see also New

Mexico v. General Elec. Co.*, 467 F.3d 1223, 1249-50 (10th Cir. 2006).  This bar extends to

challenges asserted under RCRA.  *See Cannon,* 538 F.3d at 1334 (upholding dismissal of RCRA

citizen suit pursuant to 113(h)); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325,

---

[8]  The first prong of RCRA's citizen-suit provision authorizes suit against the United States or
any government agency "alleged to be in violation of any permit, standard, regulation, condition,
requirement, prohibition, or order which has become effective pursuant to [RCRA]."  42 U.S.C.
§ 6972(a)(1)(A). The Complaint does not cite this provision, and does not allege any violation of
RCRA.

[9]  Section 113(h)'s jurisdictional bar is subject to limited exceptions, none of which applies in this
case.  *See* 42 U.S.C. § 9613(h)(1)-(5).

328-29 (9th Cir. 1995) (holding that Section 113(h) bars claims "made in citizen suits and under non-CERCLA statutes," where plaintiff's suit included claims brought under RCRA).[10]  New Mexico's RCRA citizen suit challenges the Air Force's CERCLA response to PFOA and PFOS releases, and thus must be dismissed.  *See United States v. State of Colorado*, 990 F.2d at 1576 ("to the extent a state seeks to challenge a CERCLA response action, the plain language of § 9613(h) would limit a federal court's jurisdiction to review such a challenge.").

### 1.     The Air Force Is Responding to PFOS and PFOA Pursuant to Section 104 of CERCLA.

Section 113(h) bars challenges to, among other things, CERCLA removal and remedial actions "selected under section [104]."  42 U.S.C. § 9613(h).  Section 104 in turn authorizes the President (or, as here, his delegate) "to remove or arrange for the removal of, and provide for remedial action" relating to pollutants and contaminants.  42 U.S.C. § 9604(a)(1).  Measures authorized by this provision include monitoring, investigating, planning, information gathering, and other actions "necessary or appropriate to plan and direct response actions."  42 U.S.C. § 9604(b)(1); *see also* 42 U.S.C. § 9601(23), (24); *supra* at 5-6.  Thus, section 113(h)'s jurisdictional bar applies "even if the Government has only begun to 'monitor, assess, and evaluate'" a release or threatened release of pollutants or contaminants.  *Cannon*, 538 F.3d at

---

[10]  RCRA itself prohibits citizen suits under § 6972(a)(1)(B) when, inter alia, "the Administrator [of EPA] . . . is actually engaging in a removal action under section 104 of [CERCLA]."  42 U.S.C. §§ 6972(b)(2)(B)(ii), 6903(1).  One court in this district has read this provision as barring a citizen suit where another federal agency -- the Bureau of Land Management -- was performing a removal.  *See Reynolds v. Lujan*, 785 F. Supp. 152, 154-55 (D.N.M. 1992) (reasoning that "it would thwart the intent of Congress if the EPA's CERCLA activities are not to be tampered with but CERCLA activities by other agencies can be"); *see also Anacostia Riverkeeper v. Washington Gas Light Co.*, 892 F. Supp. 2d 161, 170 (D.D.C. 2012) (reading RCRA citizen-suit prohibition as applying generally to the federal government).  At a minimum, RCRA's limitations on imminent and substantial endangerment suits confirms that Congress did not intend to allow RCRA citizen suits to interfere with CERCLA response actions, and thus that such suits are properly barred by section 113(h).

1334 (quoting *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236, 239 (9th Cir. 1995)).

Lawsuits asking a court to dictate specific actions related to pollutants or contaminants that the

government is already investigating are barred because such relief would "threaten to *obviate the*

*very point of*" the investigative process.  *El Paso Nat. Gas v. United States*, 750 F.3d 863, 881

(D.C. Cir. 2014) (emphasis in original).

      The Air Force is investigating and responding to PFOS and PFOA as pollutants or

contaminants under section 104 of CERCLA.  *See supra* at 5-6 (discussing delegation of

CERCLA authority); 42 U.S.C. § 9604(a)(1).  The preliminary assessment and site investigation

conducted at both Cannon and Holloman, as well as the planned remedial investigations, are part

of an evaluation process set out in the NCP, 40 C.F.R. Part 300.  *See* Howard Decl. ¶ 9; 40

C.F.R. §§ 300.410, 300.420; 300.430.  This process is necessary to allow the Air Force to gather

information concerning PFOS and PFOA, and to identify actions (if any) necessary to protect

human health and the environment.  The past and forthcoming work at both Cannon and

Holloman is, in short, "investigations, monitoring, surveys, testing, and other information

gathering" that the Air Force deems "necessary or appropriate to identify the existence and

extent of the release or threat [of release]" of PFOS and PFOA, as well as "the extent of danger

to the public health or welfare or to the environment."  42 U.S.C. § 9604(b)(1).

      **2.**    **New Mexico's RCRA Claim Challenges the Air Force's CERCLA**
              **Response.**

      If a lawsuit calls the government's response plan into question "it is related to the goals

of the cleanup, and thus constitutes a 'challenge' to the cleanup under § 9613(h)."  *New Mexico*

*v. General Elec. Co*., 467 F.3d at 1250; *see also Cannon*, 538 F.3d at 1328.  Among other relief,

New Mexico demands:

Immediate injunctive relief requiring the abatement of ongoing violations of the HWA and RCRA, abatement of the conditions creating an imminent and substantial endangerment, and to fund any costs associated with each compliance whether incurred by the State or third parties performing abatement; [and]

A permanent injunction directing Defendants to take all steps necessary to achieve permanent and consistent compliance with HWA and RCRA.

Compl., Prayer for Relief ¶¶ b., c.[11]  Any injunctive relief granted pursuant to these broad requests would necessarily interfere with the Air Force's CERCLA response; thus, New Mexico's RCRA claim is a "challenge" to that response. *See Anacostia Riverkeeper*, 892 F. Supp. 2d at 173 (where plaintiffs sought an order directing defendant to "take all such actions as may be necessary to eliminate any endangerment," any relief fashioned by Court "would most certainly interfere with implementation of the proposed CERCLA remedies"); *Shea Homes Ltd. Partnership v. United States*, 397 F. Supp. 2d 1194, 1204 (N.D. Cal. 2005) (RCRA claim seeking injunctive relief was "plainly related to the goals of the clean up" and "would likely require some interference with on-going clean up plans" and thus was barred by 113(h)).

New Mexico's Motion for Preliminary Injunction helps to flesh out the broad demands in New Mexico's Complaint.  New Mexico seeks, among other preliminary relief, "[r]egular sampling of all water wells" within a certain radius of the Bases; offsite sampling of rivers and streams; analysis of additional chemicals in soil and water "on and near the Bases;" resampling of on-base wells; and wildlife and migratory bird surveys.  PI Mot. 4-5.

---

[11]  New Mexico also seeks past and future oversight and compliance monitoring costs.  Compl., Prayer for Relief ¶¶ c., d.  Nowhere in the body of the Complaint does New Mexico allege it has actually incurred such costs, let alone identify them with any specificity.  Even if the State had done so, however, this relief would be unavailable, as RCRA's citizen suit provision does not authorize cost recovery.  *Meghrig*, 516 U.S. at 484; *see generally id.* at 484-88; *see also Avondale Federal Savings Bank v. Amoco Oil Co.*, 170 F.3d 692, 694-95 (7th Cir. 1999) (RCRA provides only for injunctive relief).

The Air Force is already doing much of this work as part of its CERCLA response. Consistent with its authority under CERCLA Section 104, the Air Force began its efforts to investigate PFOS and PFOA at Cannon and Holloman in 2015, *supra* at 9, 11, and thus far has expended over $2,500,000 at the two Bases.  Howard Decl. ¶ 13.  At Cannon, the Air Force has completed a preliminary assessment; followed up with additional soil, groundwater, surface water, and sediment samples; and offered alternative drinking water to the property owners potentially affected by releases from Air Force activities.  *Supra* at 9-11.  Likewise, the Air Force has completed its site assessment at Holloman; as part of this effort, it took soil, sediment, and groundwater samples, and determined that, at least for now, no alternative drinking water is required.  *Supra* at 11-13.  The next CERCLA phase at both Bases will be to conduct a remedial investigation to further characterize the sites and evaluate possible remedial actions.  *Supra* at 11, 13.

New Mexico is apparently dissatisfied with the pace and nature of the Air Force's response.  That does not, however, give New Mexico license to dictate the scope of that response, or to reorder the Air Force's priorities – indeed, New Mexico's effort to do so is "exactly what [section 9613(h)] prohibits."  *Reynolds v. Lujan*, 785 F. Supp. at 154 (dismissing RCRA citizen suit that sought an order compelling the federal government to "engage in a comprehensive cleanup of the contamination on and off the site" when the government was engaged in ongoing response actions).  New Mexico's RCRA citizen suit therefore must be dismissed for lack of jurisdiction

## B.     The United States Has Not Waived Sovereign Immunity as to New Mexico's State Law Imminent-Endangerment Claim.

In its state law claim, New Mexico invokes its imminent-endangerment authority under N.M. Stat. Ann. § 74-4-13(a).  Like the RCRA citizen-suit provision, this statute authorizes New

23

Mexico "to bring suit in the appropriate district court to immediately restrain any person . . . who has contributed or is contributing to" hazardous waste management or disposal which "may present an imminent and substantial endangerment to health or the environment." *Id.*; *see* Compl. ¶ 138.  For New Mexico to sue the United States under this provision, it must identify an applicable waiver of sovereign immunity.  *See United States v. Bormes*, 568 U.S. 6, 9-10 (2012); *United States Dep't of Energy v. Ohio*, 503 U.S. at 615.  New Mexico points to RCRA § 6961, which subjects the United States to "State . . . requirements, both substantive and procedural . . . respecting control and abatement of solid waste or hazardous waste disposal and management." 42 U.S.C. § 6961(a);*Colorado*, 990 F.2d at 1576 (under 42 U.S.C. § 6961 federal facilities are subject to state and local regulations); Compl. ¶ 119.  RCRA § 6961 does not, however, authorize state law imminent-endangerment suits against the United States.  New Mexico's state law claim must therefore be dismissed for lack of jurisdiction.

As a threshold matter, RCRA's citizen suit provision provides the only applicable waiver of sovereign immunity for an imminent-endangerment suit against the United States.  *See Ohio*, 503 U.S. at 613 n.5.  There are multiple conditions and restrictions on that waiver of sovereign immunity: the prospective plaintiff must provide 90 days' notice; suit may be brought only in the district court in which the endangerment allegedly exists; and suit may not be brought at all where EPA or a state is pursuing a qualifying response action under RCRA or CERCLA.  42 U.S.C. § 6972(a), (b)(2)(B), (C).  Where a sovereign immunity waiver contains such specific and detailed conditions, any more general waiver does not apply.  *See United States v. Bormes*, 568 U.S. at 12-13.  New Mexico thus cannot rely on the federal-facility waiver as authority for its imminent-endangerment suit against the United States.

Even if New Mexico could use the federal-facility waiver, New Mexico's imminent-endangerment authority is not a state law "requirement" to which the United States has subjected itself.  Waivers of sovereign immunity are construed strictly in favor of the sovereign.  *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012); *Ohio*, 503 U.S. at 615.  Any ambiguity in a sovereign immunity waiver thus must be construed in favor of the United States.  *Cooper*, 566 U.S. at 290.  Ambiguity exists when there is a plausible argument that the statute does not waive immunity.  *See id.* (citing *United States v. Nordic Villiage, Inc.*, 503 U.S. 30 34, 37 (1992)).  If the scope of the waiver is not "clearly discernable from the statutory text in light of traditional interpretative tools," the interpretation most favorable to the United States prevails.  *Id.* at 291.

It is not "clearly discernable" from the text of 42 U.S.C. § 6961 that New Mexico's imminent-endangerment authority is a "requirement" as to which Congress has waived federal sovereign immunity.  Congress did not define "requirements" in the statute.  *United States v. New Mexico*, 32 F.3d 494, 497 (10th Cir. 1994).  Courts, however, have limited the scope of qualifying "requirements" to "substantive standards and the means for implementing those standards."  *Ohio*, 503 U.S. at 627-28 (citing *Mitzelfelt v. Dep't of the Air Force*, 903 F.2d 1293, 1295 (10th Cir. 1990)); *New Mexico*, 32 F.3d at 497; *see also Romero-Barcelo v. Brown*, 643 F.2d 835, 855 (1st Cir. 1981) (requirements are "relatively precise standards capable of uniform application.").

The state imminent-endangerment provision does not create a substantive standard, nor is it a means for implementing substantive standards set forth elsewhere in the HWA.[12]  *See* N.M. Stat. Ann. § 74-4-13.  It does not impose any legal obligations, or prohibit any conduct – it

---

[12]  New Mexico's state law claim does not seek to enforce any violation of state solid or hazardous waste laws.  *See* discussion *infra* § I.C.

simply authorizes New Mexico to pursue a lawsuit under certain circumstances.  It thus is not a

"requirement" as to which the United States has waived sovereign immunity.  *See Florida Dep't*

*of Envt'l Reg. v. Silvex Corp.*, 606 F. Supp. 159, 161, 163-64 (M.D. Fla. 1985) (finding, in part,

statute authorizing imminent hazard lawsuit is not a "requirement" under RCRA).  New

Mexico's state law claim must therefore be dismissed.

C.    **A State Imminent-Endangerment Claim Would In Any Event Be Barred By Section 113(h).**

Even if the United States had waived sovereign immunity as to an imminent-

endangerment claim under state law, that claim would be barred by section 113(h) of CERCLA

for the reasons discussed in section I.A. above.  *See Clinton Cty. Comm'rs v. EPA*, 116 F.3d

1018, 1025 (3d Cir. 1997) (en banc) (barring a state law claim raised by way of RCRA because

"Congress intended to prohibit federal courts from exercising subject matter jurisdiction over *all*

citizens' suits challenging incomplete EPA remedial actions under CERCLA") (emphasis in

original); *see also Jach v. American Univ.*, 245 F. Supp. 2d 110, 114-15 (D.D.C. 2003) (113(h)

bar applies "regardless of how plaintiffs dress up their claims").

In *United States v. Colorado*, 990 F.2d 1565 (10th Cir. 1993), the Tenth Circuit allowed

an enforcement action under state hazardous waste laws to proceed notwithstanding the

CERCLA section 113(h) bar.  *Colorado* is, however, distinguishable, and thus cannot save New

Mexico's state law imminent-endangerment claim.  In *Colorado*, the state sought to enforce a

compliance order requiring the United States to submit a closure plan for a particular hazardous

waste management unit; to submit work plans and schedules for additional monitoring and

similar tasks; and to obtain state approval of all such plans.  *Id.* at 1573.  The Tenth Circuit held

that "enforcement actions under state hazardous waste laws which have been authorized by the

26

EPA to be enforced by the state in lieu of RCRA do not constitute 'challenges' to CERCLA response actions," and thus are not barred by section 113(h).  *Id.* at 1579.

*Colorado's* holding does not govern this case. Critically, in *Colorado* the Tenth Circuit distinguished enforcement suits from imminent-endangerment suits, holding only that the former could proceed notwithstanding section 113(h).  *Id.* at 1578.  In this case, unlike *Colorado*, New Mexico is not seeking to enforce a compliance order; and it is not otherwise seeking to remedy an alleged violation of state solid or hazardous-waste law requirements.[13] It is, instead, pursuing an imminent-endangerment suit in an effort to speed up, add to, or otherwise dictate the Air Force's response to PFOS and PFOA at Cannon and Holloman.  New Mexico's efforts to use litigation to "impose[] contrary or inconsistent requirements" and otherwise shape the content of the federal response are precisely what CERCLA section 113(h) forbids.  *United States v. Denver*, 100 F.3d 1509, 1514 (10th Cir. 1996); *see supra* at 19-23.

In sum, to the limited extent that New Mexico's claims fall within a sovereign immunity waiver, those claims are barred by section 113(h) of CERCLA.  New Mexico's Complaint must therefore be dismissed.

---

[13] New Mexico does not allege a violation of state solid and hazardous waste law. It asserts that Cannon and Holloman Air Force Bases are "subject to cleanup obligations applicable to PFAS under RCRA permits," Compl. ¶ 126, but does not allege any violation of those permits.  It points to detections of PFOS and/or PFOA at levels in excess of the RSL, Compl. ¶¶ 102, 105, 106 – but the RSL is not legally binding, and these exceedances are not a violation of state hazardous waste law.  It alleges that the Air Force declined to make certain revisions to the Cannon Site Investigation Report that were "requested by NMED" – but does not allege that the Air Force was required to do so (or, indeed to submit the report to NMED at all).  Compl. ¶ 89. It claims that the Air Force has "declined to take remedial action required under law" at Cannon, Compl. ¶ 140, but does not identify what actions the Air Force has declined to take or point to the laws that supposedly require those (unidentified) actions.

II.     **New Mexico Has Not Satisfied Its Heightened Burden of Showing Entitlement to a Mandatory Preliminary Injunction.**

      A.     **New Mexico Will Not Be Irreparably Harmed by the Status Quo.**

The Tenth Circuit has held that "the single most important prerequisite for the issuance of a preliminary injunction," is the demonstration of "probable irreparable harm." *New Mexico Dep't of Game & Fish*, 854 F.3d at 1250.  The movant must also show that the "injury must be likely to occur before the district court rules on the merits." *Id*. (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1261 (10th Cir. 2003)).[14]  If the moving party does not meet this burden, the court need not address the other requirements for a preliminary injunction.  *New Mexico Dep't of Game & Fish*, 854 F.3d at 1249.  As explained below, New Mexico has failed to meet the requirements set forth in *New Mexico Dep't of Game & Fish*.  Therefore, New Mexico's motion for preliminary relief can be denied based on this failure alone.

      1.     **The Air Force Is Already Addressing the PFOS and PFOA Releases at Both Sites.**

The potential for health and environmental effects from PFOS and PFOA exposure is an emerging issue.  The Air Force has been comprehensively investigating and addressing PFOS and PFOA releases at its bases nationwide since 2010.  Howard Decl. ¶ 13.  As explained *supra*

---

[14]  The Tenth Circuit has referred to "imminent" harm in describing the standard for a preliminary injunction.  *See Heideman v. South Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003).  This terminology can become confusing in this motion because RCRA includes the phrase "imminent and substantial endangerment," but uses a much different definition of "imminent" than is used in the context of a preliminary injunction motion.  Under RCRA, a harm will be considered "imminent" "as long as the risk of threatened harm is present."  *Burlington Northern and Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1020 (10th Cir. 2007).

at 5-6, CERCLA provides the framework for these response activities and the Air Force is conducting them in a risk-based prioritized manner pursuant to its delegated authority.[15]

The Air Force began investigating PFOS and /PFOA and identifying the areas where firefighting foam may have been released at both the Cannon and Holloman Air Force Bases in 2015. *See supra* at 9-13. Since then, the Air Force has completed preliminary assessments and site investigations at each site, including sampling offsite wells used for drinking water. As soon as the Air Force determined that there was a potential impact of PFOS and PFOA on drinking water it informed the community and reached out to affected property owners to provide sampling and alternative water supplies where needed. The Air Force plans to conduct remedial investigations, the next phase in the CERCLA response action, in the coming years. *Id*.

In sum, the Air Force has taken concrete steps consistent with CERCLA to identify and mitigate the risks of exposure from PFOS and PFOA. New Mexico has failed to show that its requested preliminary relief would prevent an irreparable harm that would occur before this case could be resolved that the Air Force has not already considered and mitigated.

> **2.      Plaintiffs Have Not Met Their Burden of Showing Probable Irreparable Harm As Necessary to Justify a Preliminary Injunction.**

Plaintiffs have not shown that any receptors will suffer irreparable harm as defined in *New Mexico Department of Game & Fish* in the absence of their requested mandatory preliminary injunctive relief,[16] particularly in light of their heightened burden. First, the Air

---

[15] Although the Air Force has independent authority to conduct response actions under CERCLA and the Defense Environmental Restoration Program, *see* 42 U.S.C. § 9604, 10 U.S.C. §§ 2700-11, NMED itself conditionally approved the Air Force's plan at Cannon in September 2018. *See* Khoury Decl. Ex. G (Dkt. 14-5).

[16] Plaintiffs' requests for various documents amount to expedited discovery but would have no bearing on the elements for preliminary relief. *See* Pls.' Br. at 4.

Force's CERCLA response actions have identified and mitigated risk from exposure through consumption.  At Cannon, the Air Force offered to sample all wells within a four-mile radius of the base.  Of the properties whose owners authorized the sampling, only three wells exceeded the health advisory for PFOS and PFOA and the Air Force offered alternative water solutions to the owners ever since.  Kottkamp Decl. ¶¶ 15-16.  At Holloman, there are no human health exposure pathways because the water downgradient of the base is not used for drinking water due high levels of total dissolved solids in excess of State standards, and no PFOS or PFOA was detected in the closest downgradient drinking water wells.  Paul Decl. ¶¶ 11-13.  For this reason, New Mexico's claim that irreparable harm would result if the Court does not order the Air Force to provide drinking water, Pls.' Br. at 5, is without merit.[17]

New Mexico also has not shown that other property owners within a four- or six-mile radius of the Cannon and Holloman Bases, respectively, are likely to suffer irreparable harm in the absence of having their wells tested.  Pls.' Br. at 4.  Again, the Air Force tested all of the wells where the property owners consented and found only three exceedances of the EPA health advisory.  The State itself also tested "dozens of private water wells within a four-mile radius" of Cannon and Holloman Bases and found no exceedances of the PFAS health advisory level. NMED, Per- and Polyfluorinated Alkyl Substances, https://www.env.nm.gov/pfas/main/ (last visited Aug. 23, 2019).

New Mexico devotes substantial attention to the potential health risks from PFAS exposure, e.g., Pls.' Br at 6-9, but can only argue as to Cannon and Holloman that PFAS will

---

[17]  NMED even admits on its public website that "[t]he Air Force is providing bottled water to those whose drinking water has been affected pursuant to the U.S. Environmental Protection Agency's health advisory level of 70 parts per trillion for two PFAS chemicals (PFOS and PFOA)."  NMED, Per- and Polyfluorinated Alkyl Substances, https://www.env.nm.gov/pfas/main/ (last visited Aug. 23, 2019).

"*eventually* reach[] public water supplies." Pls.' Br. at 22 (emphasis added). Eventually is not sufficient to show harm is likely prior to resolution of this case as required. *New Mexico Department of Game & Fish*, 854 F.3d at 1250. New Mexico has simply not presented evidence of irreparable harm to human health from PFOS or PFOA exposure in drinking water.

Second, New Mexico argues that its citizens near the Bases will suffer irreparable economic harm due to PFOS and PFOA in groundwater used for irrigation and livestock grazing purposes. The State points as an example to the closure of the Highland Dairy. Pls.' Br. at 22. Economic losses are not irreparable injury, however, because such harm is compensable through monetary damages. *Heideman*, 348 F.3d at 1189.

Third, New Mexico asserts harm to its ecological and environmental resources, yet admits that "the full extent of those injuries has not yet been fully identified."[18] Pls.' Br. at 22. This unsubstantiated claim does not satisfy the heightened burden for imposing affirmative preliminary injunctive relief on the United States. The State also make vague claims of harm from loss of recreational activities at the Holloman Evaporation Pond (also sometimes called Lake Holloman) including camping, hunting, and bird watching for recreational purposes but does not mention how such recreation poses a risk of harm to those individuals. Pls.' Br. at 21. Moreover, while the Air Force cannot restrict public access because the pond is owned by the United States Bureau of Land Management, there are signs posted that prohibit swimming. Paul Decl. ¶11.

Accordingly, New Mexico has not shown any irreparable harm.

---

[18] New Mexico reserves its rights as a natural resources damages trustee under CERCLA, 42 U.S.C. § 9607(a)(4)(c), Comp. ¶ 17 n.1, but does not address how this provision of CERCLA is not adequate to protect its claims of injury to "ecological and environmental resources."

3.   **New Mexico's Delay in Pursuing a Preliminary Injunction Undermines Its Claim of Irreparable Harm.**

Courts have held that "[a]s a general proposition, delay in seeking preliminary relief cuts against finding irreparable injury." *Kan. Health Care Ass'n v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994) (citation and internal quotation marks omitted). This is so because "the very idea of a preliminary injunction is premised on the need for speedy and urgent action to protect a plaintiff's rights before a case can be resolved on its merits." *Wreal LLC. v. Amazon.com Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (citation omitted).  In *Wreal*, the court noted that "[a] delay in seeking a preliminary injunction of even only a few months—though not necessarily fatal—militates against a finding of irreparable harm." *Id.* (citation omitted).

Here, New Mexico admits that it has been on notice of the potential for PFOS and PFOA releases at or downgradient from the Cannon and Holloman Air Force Bases since at least 2017 and 2015, respectively.  Compl. ¶¶ 61, 98.  Yet, the State did not bring this case until March 5, 2019, and then waited almost five *additional* months to seek a preliminary injunction.  This lengthy delay undermines the State's argument that its citizens and natural resources will suffer irreparable harm in the absence of a preliminary injunction.

B.   **New Mexico Has Not Made the Strong Showing Required by the Tenth Circuit That It is Likely to Obtain Relief on the Merits**

Because New Mexico is seeking a mandatory preliminary injunction, an order that would compel the Air Force to take affirmative action before the merits of the case have been decided, New Mexico "must satisfy a heightened burden" to obtain preliminary relief.  *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at 975.  The Tenth Circuit has "caution[ed] courts against granting injunctions that alter the status quo." *Attorney General of Oklahoma v. Tyson*

*Foods, Inc.*, 565 F.3d 769, 776 (10th Cir. 2009). "[A] party seeking such an injunction must

make a strong showing both with regard to the likelihood of success on the merits and with

regard to the balance of harms." *O Centro Espirita Beneficiente Uniao Do Vegetal*, 389 F.3d at

976. New Mexico has failed to make the necessary showing.

New Mexico seeks injunctive relief, as well as past and future oversight and compliance

monitoring costs. Compl., Prayer for Relief ¶¶ c., d. RCRA's citizen suit provision, however,

does not authorize cost recovery. *Supra* at 22 n.11. Section 6972(a) of RCRA does authorize

injunctive relief; the district court may

> restrain any person who has contributed or who is contributing to the past or
> present handling, storage, treatment, transportation, or disposal of any solid or
> hazardous waste referred to in paragraph (1)(B), to order such person to take such
> other action as may be necessary, or both.[19]

42 U.S.C. § 6972(a). New Mexico has not satisfied its burden to show additional relief is likely

and therefore is unlikely to succeed on the merits of its claims.[20]

As explained above, the Air Force, exercising its authority as lead agency under

CERCLA, 42 U.S.C. § 9604(a), and DERP, 10 U.S.C. § 2701(c)(1)(A), has taken significant

steps to respond to PFOS and PFOA when these chemicals were detected in soil, surface water,

and groundwater at Cannon and Holloman. The Air Force completed both preliminary

assessments and site investigations to identify areas where PFOS and PFOA were present. This

process also identified the areas where a remedial investigation was considered necessary.

---

[19] New Mexico's imminent-endangerment authority contains substantially similar remedial
language. N.M. Stat. Ann. § 74-4-13(a).

[20] This argument assumes that the Court even reaches New Mexico's arguments pertaining to its
likelihood of success on the merits. As explained in Argument Section I above, this action
should be dismissed in its entirety on jurisdictional grounds, including the CERCLA Section
113(h) bar and sovereign immunity.

During the remedial investigation, the Air Force will gather the information necessary to decide what remedial action is needed at the particular area.  The Air Force is responsible for implementing such action consistent with the NCP.

Therefore, even assuming arguendo that New Mexico could show that there was a strong likelihood that it could establish that PFOS and PFOA released by the Air Force "may present an imminent and substantial endangerment to health or the environment," 42 U.S.C. 6972(a), there is no evidence that the Air Force's response action is insufficient to abate any such endangerment.[21]  Accordingly, New Mexico has failed to show that it is likely to obtain any relief on the merits of its claim and is not entitled to preliminary relief.

### C.   The Balance of Equities Weighs in Favor of the United States, and Issuance of an Injunction Would Harm the Public Interest.

The balancing of the equities and public interest prongs are not just a summary of the other prongs; they are separate from and additional to the other prongs.  *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (stating that plaintiffs must carry the burden or persuasion as to each element "*by a clear showing*") (emphasis in original) (citation omitted).  Where the federal government is a party, the equities and public interest inquiries tend to merge.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  Here, the balance of equities and public interest weigh against an injunction, particularly in light of the State's heightened burden of seeking mandatory, as opposed to merely prohibitory, relief.

First, as explained in Argument Section II.A., the Air Force is already conducting a response action at each Base under CERCLA and has been doing so diligently since the discovery of PFOS and PFOA releases at both Bases as part of a nationwide effort to address

---

[21]  The United States reserves the right to contest the merits of New Mexico's claims at any later stage in these proceedings.

PFOS and PFOA from firefighting foam.  This comprehensive program of CERCLA response actions reasonably maximizes limited resources in light of evolving science by prioritizing cleanups based on risk of exposure.  New Mexico accuses the Air Force of "inaction" and avoiding "responsibility", Pls.' Br. at 4, 5, 24, 25, but that could not be further from the truth. The Air Force has taken responsibility to investigate and address PFOS and PFOA releases; the State simply wants to jump the line ahead of other sites that pose higher risks of exposure and adverse health effects.  Contrary to the State's claim that the only harm from issuing the requested preliminary relief would be "temporary and monetary," *id*. at 24, such an injunction would in fact divert resources from other sites where the risk of exposure is greater.  It would be contrary to the public interest to disrupt the Air Force's orderly risk-based prioritization of response actions across the country and force the Air Force to take affirmative steps at these Bases ahead of other bases where PFOS and PFOA may pose a greater risk to the public health. *See, e.g., Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States of Am. Inc.*, 549 F.3d 1079, 1100 (7th Cir. 2008) (holding that balancing of equities and consideration of public interest "includes the ramifications of granting or denying the preliminary injunction on nonparties to the litigation").  In contrast, the State has not shown that it will be harmed by maintaining the status quo during the remainder of this case where there has been no showing of irreparable harm to wildlife and the Air Force has already taken measures to address any risks to human health, e.g., by providing alternate water supplies to the few affected individuals.  In short, besides being precluded under CERCLA section 113(h), *see supra* Argument Section I.A., it would be inequitable and contrary to the public interest for the Court to substitute the State's preferred way of addressing PFOS and PFOA for the judgment of the agencies already conducting the response activities.

Second, the balance of equities and public interest weigh against a preliminary injunction where, as here, the party seeking a preliminary injunction delayed filing its motion. *See, e.g., Justice v. Hosemann*, 829 F. Supp. 2d 504, 520-21 (N.D. Miss. 2011) (citing *Respect Maine Pac v. McKee*, 622 F.3d 13, 16 (1st Cir. 2010). New Mexico has known about potential PFOS and PFOA releases at Cannon and Holloman since 2017 and 2015, respectively, yet waited until July 24, 2019 to seek a preliminary injunction. *See* Argument Section II.C. Granting the equitable remedy of a preliminary injunction now, after the Air Force has expended considerable resources addressing the PFOS and PFOA already, would only reward the State's delay in pursuing this relief.

New Mexico has failed to meet its heightened burden of showing that it is entitled to mandatory injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint or, in the alternative,

deny the motion for preliminary injunction.

Respectfully submitted,

/s/ *Eileen T. McDonough*
EILEEN MCDONOUGH
DAVID MITCHELL
ERICA ZILIOLI

*Of Counsel:*                          *Trial Attorneys*
MICHAEL CASILLO                        Environmental Defense Section
Environmental Litigation Center        P.O. Box 7611
U.S. Air Force                         Washington, D.C.  20044
Joint Base Andrews, MD                 (202) 514-3126
                                       eileen.mcdonough@usdoj.gov

37

**CERTIFICATE OF SERVICE**

I hereby certify that on September 7, 2019, I filed the foregoing using the Court's

CM/ECF system, which will electronically serve all counsel of record registered to use the

CM/ECF system.

/s/ *Eileen T. McDonough*